## KAVANAGH v. FIRST NAT. BANK OF WYANDOTTE.

No. 9460.

Circuit Court of Appeals, Sixth Circuit.

Dec. 8, 1943.

Ray A. Brown, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Samuel H. Levy, and Ray A. Brown, all of Washington, D. C., and John C. Lehr and Arnold W. Lungerhausen, both of Detroit, Mich., on the brief), for appellant.

Francis W. McCauley, of Detroit, Mich., for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal attacks a judgment of the District Court allowing recovery of $600 paid on account of a deficiency income tax for the year 1934, assessed by the Commissioner in 1940. The facts are stipulated, and so far as material may be summarized as follows:

On March 5, 1933, the appellee bank was closed by the Comptroller of the Currency because of insolvency, and a receiver was subsequently appointed. On June 24, 1935, the receiver filed with the appellant a return in blank of corporation income and excess profits tax, but attached thereto an affidavit stating that the bank ceased to do business by reason of insolvency on March 5, 1933, and that "the amount which may reasonably be expected to be realized from assessments against stockholders, will not in the aggregate be sufficient to pay depositors in full, and it is respectfully requested that proper application be made to this taxpayer of the benefits of the Act of March 1st, 1879, Title 12 U.S. Code (annotated) Section 570."

During the year 1939 the receiver completed in full payment of the claims of all depositors of the bank, including certain interest, the total dividends being 111%. On April 30, 1940, the receiver filed an amended income tax return for the year 1934, which showed a net income of $12,-520.54 for that year. The Commissioner in November, 1940, assessed against the bank for the year 1934 a deficiency of $1,625.32, which together with two items of interest totalled $2,185.07. On December 7, 1940, the agent of the stockholders of the bank paid the appellant $600, representing a portion of the assessment, and later filed timely claim for refund, which was disallowed, and the present suit was instituted.

The applicable statutes are § 22 of the Act of March 1, 1879, 12 U.S.C. § 570, 12 U.S.C.A. § 570, and the amendments thereto, Rev.Act of 1938, c. 289, 52 Stat. 447, and 26 U.S.C. § 3798, 26 U.S.C.A. Int.Rev. Code, § 3798, and § 52 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 683. Section 22 of the Act of March 1, 1879, reads as follows: "Whenever and after any bank has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States, on account of such bank, which shall diminish the assets thereof necessary for the full

payment of all of its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall so appear to him, is authorized to remit so much of said tax against insolvent State and savings banks as shall be found to affect the claims of their depositors."

The amendment of 1938 re-enacted § 22 of the Act of March 1, 1879, in substance, added a paragraph extending the benefits of the Act to banks not insolvent but in financial difficulties, and also added a paragraph material to this controversy, which reads as follows: "(c) Any such tax so collected shall be deemed to be erroneously collected, and shall be refunded subject to all provisions and limitations of law, so far as applicable, relating to the refunding of taxes, but tax so abated or refunded after the date of the enactment of the Revenue Act of 1938 shall be reassessed whenever it shall appear that payment of the tax will not diminish the assets as aforesaid. The running of the statute of limitations on the making of assessment and collection shall be suspended during, and for ninety days beyond, the period for which, pursuant to this section, assessment or collection may not be made, and a tax which has been abated may be reassessed and collected during the time within which, had there been no abatement, collection might have been made."

This amendment was re-enacted in 1939 in the same form, except that May 28, 1938, the date of the enactment of the Revenue Act of 1938, was substituted in paragraph (c).

If the blank return and affidavit filed by the receiver in 1935 constituted a proper return within the provisions of § 52 of the Revenue Act of 1934, it started the three-year statute of limitations running (§ 275 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 748), the assessment was not timely, and appellee is entitled to a refund. The District Court gave judgment for the appellee upon this ground.

The appellant contends that the blank return and affidavit did not constitute a valid return because the receiver, in violation of § 52 of the Revenue Act of 1934, failed to state the items of "gross income and deductions and credits" allowed the bank under the statute. Therefore he claims that the limitation prescribed falls within § 276 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 749, which provides that "In the case of * * * a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

■ The appellee construes the statute of March 1, 1879, as being self-executing with reference to national banks which are found by the Comptroller of the Currency to be insolvent. It urges that the finding of the Comptroller as to insolvency is conclusive and results in automatic abatement of the tax, and that therefore there can be no valid assessment or reassessment in 1940 because prior to the amendments of 1938 and 1939, the statute made no provision for reassessment or assessment of an abated tax.

Appellee's construction of the abatement provision, § 22 of the Act of March 1, 1879, ignores the fact that the term is in the passive tense, "shall be abated," and that the use of the passive continues throughout the amendment of 1938 providing for reassessment in case of "a tax which has been abated." In addition, the term "such tax" in Section 22 refers back to the phrase "which shall diminish the assets thereof necessary for the full payment of all its depositors." Only when it appears that the tax will result in such diminution of assets is it required by this statute to be abated.

■ While the Comptroller's determination of insolvency is conclusive as to shareholders' liability (National Bank v. Case, 99 U.S. 628, 25 L.Ed. 448; Barbour v. Thomas, 6 Cir., 86 F.2d 510, certiorari denied 300 U.S. 670, 57 S.Ct. 513, 81 L. Ed. 877), such conclusiveness does not prevent an independent determination by the Commissioner that a national bank found insolvent by the Comptroller has in fact sufficient assets to pay tax liability without diminishing funds necessary to pay depositors. The purpose of the Act is to relieve the depositors from the payment of taxes not assessed upon them, but not to relieve the owers of the bank. Jackson v. United Staes, 20 Ct.Cl. 298. These considerations compel the conclusion that an official determination or allowance of abatement is essential. This is the interpretation of the taxing authorities, as shown in the Regulations, § 464 A.3(c), which in defining the terms "statute of limitations" and "limi-

tations," speaks of limitations "relative to the allowance of refunds and abatements."

■ Moreover, abatement, whether used in the active or passive sense, that is, whether automatically brought about by the Comptroller's determination of insolvency, or brought about by an allowance of abatement by the Commissioner, under the statutes involved can only be made if the tax has been assessed. This construction is recognized by the amendment of 1938, which speaks of a tax abated as being "reassessed," and the precise meaning of the terms abatement and assessment require this construction. Assessment calculates the rate and amount of tax and fixes the liability for the payment of the tax. Only when this is done can it actually be determined that the taxes will diminish the assets necessary for the full payment of all depositors and that the abatement required by the statutes is proper. Abatement, in this statutory sense, assumes the existence of assessment. This is true whether, as held in Gulf States Steel Co. v. United States, 5 Cir., 56 F.2d 43, 46, 48, abatement presupposes an error or mistake in the assessment, or as declared in the dissenting opinion in the same case, it includes "remission before payment." Cf. Johnston, Rec'r, v. United States, 17 Ct. Cl. 157; Inhabitants of Billerica v. Inhabitants of Chelmsford, 10 Mass. 394, 396; State v. Armstrong, 17 Utah 166, 53 P. 981, 41 L.R.A. 407. Here the tax had not been assessed prior to 1940, nor had it been abated.

■ As assessment is the prerequisite of abatement, so is the return a prerequisite of assessment. Until the return was filed, the appellant had no information upon which to base an assessment. Appellee contends, however, that the Commissioner has an implied authority to waive the requirement of a return in compliance with § 52 of the Revenue Act of 1934, because in the case of an insolvent bank such a return is a useless formality, and that the return was waived through the deliberate action of the taxing authorities whose departmental ruling invited and sanctioned the filing of the form used by appellee in 1935. It contends that in view of the departmental ruling, this so-called return was sufficient to set the three-year statute running.

The return was filed in accordance with Income Tax Decision No. 3080, Cumulative Bulletin 1937-1, page 97, which in substance provides that in case of insolvency a receiver and conservator of a national bank may file blank returns except for an attached affidavit stating that the assets of the bank, including all amounts expected to be realized from assessments against stockholders, will be insufficient to pay the depositors in full.

This ruling was first promulgated in 1919, and has been followed for a number of years. It clearly conflicts with the provisions of § 52 as to corporation returns to be made by receivers. However, appellee urges that § 52 is in conflict with § 22 of the Act of March 1, 1879, and that the Commissioner therefore is authorized to waive the formal statutory return.

■ We think that the two statutes are entirely consistent. The requirement of § 52 that receivers operating the property or business of insolvent corporations shall make returns in the same manner and form as corporations does not limit nor repeal the privileges granted by § 22. In fact only from such returns can it be readily determined whether or not a tax would diminish the assets necessary for the full payment of the depositors and in so far § 52 is supplementary to the provisions of § 22. The two statutes must be read together and so construed, they require a return under § 52, regardless of the determination of insolvency.

■ The importance of the statutory return is illustrated by the instant case; for if the required data had been given in 1934, and subsequent years, with items of gross income, deductions and credits, the Commissioner would have been put upon notice that the bank was proceeding to liquidate claims of depositors, and would not have been placed in the position of knowing for the first time in 1940 that an assessment was necessary for 1934. Section 52 directs in mandatory language that receivers give this information, and the adjudications hold that similar requirements cannot be dispensed with. In Lucas v. Pilliod Lumber Co., 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L.R. 1350, the court declared that the statutory requirement as to the execution of the return is not the subject of waiver, and that "No officer had power to substitute something else for the thing specified [by the statute]." In Florsheim Bros. Dry Goods Co. v. United States, 280 U.S. 453, 50 S.Ct. 215, 299, 74 L.Ed. 542, a plan devised by the Commissioner of Internal Revenue in order to allow corpora-

tions extended time to prepare returns and officially promulgated in a form provided by the Commissioner for the purpose was held not to be a return authorized by statute, and not to start the period of limitation. Since the form was not an instrument expressly provided in the Act, the court held that in spite of its convenience and in spite of its being a formal document prescribed by the Commissioner, its use was not authorized. We conclude that the blank form and affidavit filed in 1934 did not constitute a return.

Since there was no return until 1940, the assessment made in 1940 was timely, and the assessment and collection were authorized by law.

The judgment is reversed and the case is remanded with instructions to dismiss the suit.