RITE-WAY PRODUCTS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. H. DARNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NATIONAL BANK OF COMMERCE IN MEMPHIS, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF JOHN B. SNOWDEN, II, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14314, 14315, 14316. Promulgated March 29, 1949.

*W. Stuart McCloy, Esq.,* and *Allan Davis, Esq.,* for the petitioners.
*Homer F. Benson, Esq.,* for the respondent.

476

OPINION.

MURDOCK, *Judge*: The executor of Snowden challenges the jurisdiction of this Court by alleging that the transferee notice to Snowden was improperly addressed. The point seems to be that Snowden was dead at the time the notice was mailed, the Commissioner should have known that from returns filed by and communications from his executor, and the Commissioner should have addressed the notice to the executor. There may be more than one person having the name of a decedent. The respondent may not safely assume that Snowden, the transferee of Rite-Way, is the same person as Snowden, a deceased taxpayer, despite identity in the names. The record does not show that this notice was mailed to other than the last known address of Snowden, the stockholder of Rite-Way, nor does it show that the Commissioner had been notified of the death of that particular Snowden. However, even if there had been error in the address as alleged, it would not have been fatal, since the proper representative of the deceased transferee actually received the notice in due course and filed a timely petition with this Court. *Kay Manufacturing Co.*, 18 B. T. A. 753; affd., 53 Fed. (2d) 1083; *Daniel Thew Wright*, 34 B. T. A. 84; affd., 101 Fed. (2d) 309.

The petitioners concede that Darnell and Snowden each received assets from the liquidation of Rite-Way which had a value in excess

of the deficiencies and interest involved herein and that the period of limitations for assessment and collection against Rite-Way was extended by proper consents filed by Rite-Way. It is also clear that the liquidating distributions were complete and thereafter Rite-Way was without any funds with which to pay the deficiencies and interest. The petitioners contend, nevertheless, that the period of limitations for assessment against and collection from the transferees expired within one year after the expiration of the original period of limitations with respect to the taxpayer; that is, that the consents had no effect in so far as the transferees are concerned. This question was decided long ago against the petitioners. The statute provides that the period of limitations for assessment of the transferee liability in the case of initial transferees of the property of the taxpayer shall be within one year after the expiration of the period of limitations for assessment against the taxpayer. Sec. 311 (b) (1). That means the original period of limitation for assessment against the taxpayer as properly extended by consents. *W. O. Menger*, 17 B. T. A. 998. Cf. *Lucas* v. *Hunt*, 45 Fed. (2d) 781. That period had not expired when the transferee notices were mailed.

The petitioner in the case of Snowden claims that his transferee liability for the taxes of Rite-Way was abated by section 421. That section provides that the "tax" imposed by chapter 1 for the taxable year in which his death occurs shall not be assessed and if assessed or collected shall be abated, credited or refunded in the case of an individual who dies on or after December 7, 1941, and prior to January 1, 1948, while in active service as a member of the military forces of the United States. That provision obviously refers to income taxes imposed upon the individual as a taxpayer. There is nothing in the wording of the provision or in its legislative history to indicate that it meant to relieve such persons of other liabilities which they or their estates might have for taxes of other taxpayers. Incidentally, only $152.49 of the total deficiency of $12,413.38 represents a tax imposed upon Rite-Way by chapter 1. The remainder of the deficiency represents taxes imposed by chapter 2. Thus, even if the petitioner's argument had any merit, it could prevail only to the extent of the deficiency of $152.49 in income tax.

The argument was made on behalf of Darnell that, since Snowden was not liable as a transferee, then Darnell should not be either, or, at the most, should be liable for only a portion of the deficiency and interest. That argument falls with the holding that Snowden and his estate were liable as transferees. Furthermore, the case of *W. O. Menger*, *supra*, is also authority for the proposition that each of these transferees is liable for the full amount of the deficiencies and interest thereon, since each received assets of the taxpayer in excess

of that amount and the Commissioner is not required to apportion the taxes and interest between the two.

Rite-Way contends that the amount which it received in 1940 on claims filed with Miller Tire Division in 1939 was not income for 1940, as determined by the Commissioner, but had accrued for 1939 under its system of accounting. The evidence shows that all of the events had occurred in 1939 which fixed not only the liability of Miller Tire Division to reimburse the petitioner for the defective material, but also to fix the amount, most of which was paid in the first month of 1940. There was at the end of 1939 no dispute between Rite-Way and Miller Tire Division in regard to these claims. A finding has been made that the amount of the claims made in 1939 and paid in 1940 should have been accrued as income for 1939. Cf. *United States* v. *Anderson*, 269 U. S. 422; *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182.

The largest item in dispute is the amount which Rite-Way received in 1943 from insurance companies under use and occupancy policies to compensate the petitioner for profits which it was prevented from earning in 1942 as the result of the disruption of its plant following a fire and explosion which took place on May 22, 1942. Here the parties are in the opposite positions from those in which they appear on the preceding issue. The taxpayer wants to report this amount as income for 1943, when it was received, and the Commissioner contends that it should have been accrued as income of 1942. Here again the evidence shows that all of the events occurred in 1942 which fixed the liability and the amount. Rite-Way and the representative of the insurance companies had not come to any agreement in regard to the amount of compensation, but the insurance companies had never denied liability and the evidence does not show a dispute as to amount in 1942 which would justify a delay in accrual. The insurance companies paid Rite-Way $6,754.94 in 1943. The record does not show how they arrived at that amount, but there is no evidence to show that any fact entering into the computation occurred after the close of 1942. The president of Rite-Way testified that the insurance companies never denied liability and were only in disagreement with him as to the amount and how it should be computed. An attorney for Rite-Way who was not hired until 1943 and was incompetent to testify in regard to what happened in 1942, said he rather thought that the insurance adjuster had said that one of the four companies was denying liability. His testimony would not support a finding that one of the companies denied liability even in 1943. He also gave testimony which was equally vague about the amount claimed by Rite-Way. The president of Rite-Way referred to some suggestion by the insurers or their

adjuster that settlement be delayed to see what the earnings would be for the twelve months following the explosion, but there is nothing in the policies to indicate that such a delay was required or permissible under the policies. The evidence as a whole does not justify disturbing the Commissioner's determination that the reimbursement on the insurance should have been accrued and reported as income for 1942. It was held in *Max Kurtz*, 8 B. T. A. 679, that insurance is accruable by the insured in the year of the fire where the insurer does not deny liability and it only remains to determine the amount.

The Commissioner disallowed a deduction of $1,000 for legal expenses which Rite-Way claimed for 1942. He apparently concedes in his brief that $500 of that amount was a proper deduction for 1942 and the other $500 was a proper deduction for 1944, the year in which Rite-Way dissolved. The entire $1,000 was deductible in 1942 as an ordinary and necessary expense. *Pacific Coast Biscuit Co.*, 32 B. T. A. 39.

The petitioners allege that the Commissioner erred in failing to allow the unused excess profits credit carry-back from the year 1943 in determining the deficiency in excess profits tax for 1942. The Commissioner explained that he had disallowed that carry-back because Rite-Way was a personal holding company in 1943 and no carry-back would be allowable for a year in which it qualified as a personal holding company. Section 502 provides that personal holding company income means that portion of the gross income which consists, *inter alia*, of rents, unless rents constitute 50 per cent or more of the gross income. Since more that 50 per cent of the gross income of the petitioner for 1943 consisted of rents, rents are not a part of its personal holding company income and, as a consequence, less than 80 per cent of its gross income for that year was personal holding company income. It follows that Rite-Way, during 1943, was not a personal holding company within the meaning of section 501. However, this Court has recently held in *Weir Long Leaf Lumber Co.*, 9 T. C. 990, that a corporation is not entitled to the benefit of unused excess profits credit carry-backs from years during which it was in the process of liquidation. Cf. *Mesaba-Cliffs Mining Co.*, 10 T. C. 1010. This petitioner had ceased its normal operations prior to 1943 and during that year was in the process of liquidation and dissolution. It is not entitled to an excess profits credit carry-back from that year to any prior year.

*Decision will be entered under Rule 50.*