THE NEW JERSEY TITLE GUARANTEE AND TRUST COMPANY (IN LIQUI-DATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101988. Promulgated October 31, 1949.

---

*Louis Bort, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: Respondent mailed to the Bank of Lafayette, % petitioner, Jersey City, New Jersey (the Bank of Lafayette having been merged with petitioner December 9, 1931, and lost its separate identity) notice of deficiency in income tax for the calendar year 1930 in the amount of $150, as transferee of assets of the New York Mutual Telegraph Co., New York, New York. The sole issue is whether or not petitioner, an insolvent state bank, is exempt from transferee liability under section 3798 of the Internal Revenue Code. The facts have been stipulated.

For many years prior to February 14, 1939, petitioner was engaged in a general banking business in Hudson County, New Jersey, a substantial part of which business consisted of receiving deposits and making loans and discounts. On that date Louis A. Reilly, then Commissioner of Banking and Insurance of the State of New Jersey, took possession of the property and business of petitioner for the purpose of liquidating it. Among the assets so taken over were 100 shares of stock of the New York Mutual Telegraph Co. standing in the name of the Bank of Lafayette.

Petitioner is still being liquidated, and as of this date there have been paid to its depositors and creditors out of the assets of the company so far liquidated 15 liquidating dividends, totaling 72½ per cent of the respective claims of the depositors and creditors. The remaining unliquidated assets of petitioner are insufficient for the full payment of its depositors.

Petitioner is a transferee of the New York Mutual Telegraph Co. That relationship grows out of an agreement dated March 17, 1883, entered into between the Mutual Union Telegraph Co. (predecessor of the New York Mutual Telegraph Co.), as lessor, and the Western Union Telegraph Co., as lessee, whereby the former leased to the latter for a term of 99 years from the 15th day of February 1883, its entire telegraph system and all of its property, to manage, operate, and maintain the same for its, the Western Union Telegraph Co.'s, own profit and at its own cost and risk of profit or loss. In return the Western Union Telegraph Co. agreed to pay as rental to the Mutual Union Telegraph Co., until January 1, 1885, the sum of $150,000 per annum, and thereafter during the term of the agreement to the stockholders of the Mutual Union Telegraph Co., or its successor company, pro rata according to the stockholdings, the sum of $150,000 per annum, no part of which sum was by said agreement after January

1, 1885, payable to the Mutual Union Telegraph Co., nor was any part thereof by said agreement thereafter during said term subject to the control or contract of the Mutual Union Telegraph Co. The agreement is still in full force and effect.

Since the inception of the lease agreement, the Western Union Telegraph Co. has continually used, operated, enjoyed, and maintained the leased property and the New York Mutual Telegraph Co. has not possessed or operated the same.

During the taxable year 1930 the Western Union Telegraph Co. paid the said sum of $150,000 directly to the stockholders of the New York Mutual Telegraph Co. During that year the Bank of Lafayette held and owned 100 shares of the par value of $25 each out of the total of 100,000 shares of capital stock of $2,500,000 par value of the New York Mutual Telegraph Co., and by reason thereof was entitled to receive and did receive from the Western Union Telegraph Co., pursuant to the agreement aforesaid, $1.50 per share in respect of the 100 shares held and owned by it, or the sum of $150.

Respondent duly assessed against the New York Mutual Telegraph Co. income tax for the calendar year 1930, but the same is still due, owing, and unpaid, because the New York Mutual Telegraph Co. has been and is still without property in its possession out of which any liability for its income tax for 1930 might be satisfied. On January 31, 1940, respondent mailed, as noted above, to the Bank of Lafayette, transferee, % petitioner, notice of deficiency proposed to be assessed for the aforesaid income tax liability of the New York Mutual Telegraph Co., to the extent of the $150 received during 1930.

Any sum or sums paid by petitioner in satisfaction of said transferee liability will diminish its assets which are available for payment to its depositors, and it has no other funds or sources out of which payment of said deficiency assessment can be made.

Petitioner contends that it is exempt from transferee liability under section 3798 of the Internal Revenue Code. Respondent maintains that it is not. Petitioner concedes that it is liable as transferee in the amount determined by respondent, plus interest as provided by law, if our decision is that it is not entitled to the exemption conferred by section 3798. That section provides, in so far as material herein, as follows:

SEC. 3798 [reenacting section 22 of the Act of March 1, 1879, as amended by section 818 of the Revenue Act of 1938 and section 406 of the Revenue Act of 1939]. EXEMPTION OF INSOLVENT BANKS FROM TAX.

(a) Whenever and after any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall

be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall appear to him, is authorized to remit so much of the said tax against any such insolvent banks and trust companies organized under State law as shall be found to affect the claims of their depositors.

There is no dispute that petitioner is an insolvent bank within the meaning of section 3798, nor, as has been stipulated, that the payment of the transferee liability of $150 will diminish the assets of petitioner available for payment of its depositors. The sole question is whether payment of this liability will be the payment of a tax "on account of" petitioner within the meaning and intent of the act. Petitioner argues that section 3798 is sufficiently broad to exempt an insolvent bank from payment of a tax due by another. Respondent's position is that the act is limited in its application to cases involving taxes directly imposed upon a bank, and that it has no application to a case such as this one, which involves the liability of stockholder-transferee of the assets of a corporation for the latter's unpaid Federal income tax.

Section 311 (a) (1) of the Revenue Act of 1928,[1] under which respondent asserted transferee liability against petitioner herein, provides a remedy for the collection of income tax in situations in which the taxpayer has transferred or disposed of his assets, leaving him unable to meet his liability. The provision was first introduced as section 280 of the Revenue Act of 1926. Prior to that time the Government's chief remedy was, to quote from the portion of the report of the Senate Finance Committee pertaining to section 280 (p. 29), "to obtain judgment against the transferor in an action at law and then proceed against the transferee in equity by a creditor's bill to satisfy the judgment." In such case, says the report, "the transferee is not liable for the tax of the transferor, but is by reason of the receipt of the assets subject to an independent liability in his own person and payable out of his own estate, arising under the trust fund doctrine or some similar theory."

The report further states (p. 30):

Under existing law proceedings for the enforcement of liability such as those heretofore discussed are solely by court proceedings. No proceedings before the board for the redetermination of a deficiency and for the ultimate enforcement by assessment and distraint may be had.

---

[1] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title.

It is the purpose of the committee's amendment to provide for the enforcement of such liability to the Government by the procedure provided in the act for the enforcement of tax deficiencies. It is not proposed, however, to define or change existing liability. The section merely provides that if the liability of the transferee exists under other law then that liability is to be enforced according to "the new procedure applicable to tax deficiencies."

It is thus quite clear that section 311 merely provides a method of enforcement of transferee liability, but does not in any way change the nature of that liability, *Phillips* v. *Commissioner*, 283 U. S. 589. That liability is secondary, not primary. *Oswego Falls Corporation*, 26 B. T. A. 60; affd. (CCA-2), 71 Fed. (2d) 673. It does not exist on the transferee's own account, but on account of the transferor, and only arises, as stated above, "under the trust fund doctrine or some similar theory." Accordingly, it is our opinion that section 3798, providing an exemption to an insolvent bank from the payment of taxes "on account of such bank," does not apply to the transferee liability of such bank.

Petitioner cites *United States* v. *Updike*, 281 U. S. 489, and other cases to the effect that transferee liability is a tax liability, and it argues that therefore, as an insolvent bank, it should be exempt from such liability under section 3798. We can not agree with this reasoning. Of course, transferee liability is a tax liability, but it is not the tax of the transferee. The transferee is only secondarily liable, as we have pointed out. *United States* v. *Updike, supra*, is authority only for the proposition that a suit against a transferee is a suit to collect a tax and that therefore the six-year period of limitation governing proceedings to collect taxes is applicable to a suit to recover a tax from a transferee. That holding is not determinative of the issue here. Simply because, in connection with the period of limitation, *United States* v. *Updike, supra*, or with the right to appeal to the Board of Tax Appeals, *Henry Cappellini*, 14 B. T. A. 1269, a transferee is considered a "taxpayer," does not change the fact that he still is not paying a tax on his own account, and hence section 3798 does not exempt him from this liability he has for the tax of another.

In the recent case of *Rite-Way Products, Inc.*, 12 T. C. 475, this Court made clear the distinction between tax liability on one's own account and the tax liability of a transferee. The Court said:

The petitioner in the case of Snowden claims that his transferee liability for the taxes of Rite-Way was abated by section 421. That section provides that the "tax" imposed by chapter 1 for the taxable year in which his death occurs shall not be assessed and if assessed or collected shall be abated, credited or refunded in the case of an individual who dies on or after December 7, 1941, and prior to January 1, 1948, while in active service as a member of the military forces of the United States. That provision obviously refers to income taxes imposed upon the individual as a taxpayer. There is nothing in the wording of the provision or in its legislative history to indicate that it meant to relieve

such persons of other liabilities which they or their estates might have for taxes of other taxpayers. * * *

So in the instant case there is nothing in the wording of section 3798, and we have found nothing in its legislative history, to indicate that Congress meant to exempt insolvent banks from other liabilities which they might have for taxes of other taxpayers.

Petitioner, however, submits that the purpose of section 3798 is obviously to protect depositors of an insolvent bank to the extent of relieving the assets of such a bank from all payments in the nature of a tax and that the wording of the section is sufficiently broad to cover transferee liability, even though such liability be other than a tax liability of the bank.

Petitioner relies primarily on *Valuation Service Co.*, 41 B. T. A. 811, in support of its contention that section 3798 is sufficiently broad in purpose and wording to cover transferee liability. In that case corporation N was organized and wholly owned by a bank, the Guardian Trust Co., and corporation N incorporated the Valuation Service Co., the petitioner therein, all of whose stock was owned by N. The officers of Valuation Service Co. were also the officers of Guardian Trust Co. Valuation Service Co. was the transferee of many of the assets of Guardian Trust Co. when Guardian Trust Co. became insolvent and liquidation was instituted by the state banking officials. The Commissioner instituted transferee liability proceedings against Valuation Service Co. for unpaid income tax due from Guardian Trust Co. The opinion states:

* * * The difference between the parties narrows to the single question whether for purposes of section 22 of the Act of March 1, 1879, petitioner's separate corporate identity should be disregarded in favor of the view that it and its remote sole stockholder, an insolvent bank, are to be treated as a unit.

It is thus evident that the question before the Board of Tax appeals in the *Valuation Service Co.* case was not one of deciding whether section 22 of the Act of March 1, 1879 (section 3798 of the Internal Revenue Code), is sufficiently broad to cover claims other than direct taxes, but was whether the insolvent bank and its remote subsidiary should, for the purpose of taxation, be treated as one unit. The Board resolved that question in the following words:

* * * We can not avoid the conclusion that it will most nearly effectuate the evident legislative purpose to treat these taxes as being due only "on account of such bank"; to treat petitioner and the bank as parts of a single organization, all of whose assets are subject to the claims of the bank's depositors * * *

It is obvious that *Valuation Service Co.* is clearly distinguishable from the case at bar, where petitioner bank is the owner of but 100 shares of the outstanding 100,000 shares of stock of the New York Mutual Telegraph Co., a separate and distinct business corporation

from petitioner and not in any way related to petitioner. Therefore, the question that was before the Board in the *Valuation Service Co.* case is not before this Court in the case at bar.

Petitioner also supports its contention for a very broad construction of section 3798 by citing *United States* v. *Sterling* (CCA-4), 106 Fed. (2d) 178. In that case the Court held that the taxpayer was exempt from a stamp tax assessed upon certificates issued by a corporate trustee to the depositors of an insolvent bank for a portion of their deposits, on the ground that subdivision (b) of section 3798 specifically provides that where depositors have accepted, in lieu of part of the liability to them, claims against assets transferred from the bank to a corporate trustee, no tax shall be assessed or collected on account of such bank or corporate trustee. Obviously, that case is inapplicable here.

Reviewed by the Court.

*Decision will be entered for the respondent.*

Leech, *J.*, dissents.

---

Disney, *J.*, concurring: Considering the generality of the expression "on account of such bank" in section 3798 of the Act of March 1, 1879, as amended by section 818 of the Revenue Act of 1938, considering the rather obvious intent of the statute to prevent diminution of the assets necessary for full payment of depositors of such bank, and considering the fact that section 311 of the Internal Revenue Code provides that transferee liability shall be assessed, collected, and paid in the same manner and subject to the same provisions as the deficiency in tax, it might offhand be thought that the majority opinion takes a view inconsistent with the purposes of the act. The statute does not say that the tax must be that of the bank, but only that it be assessed, collected, or paid into the Treasury on account of the bank, and, considering the object of the statute, it would seem reasonable to think that in this matter a tax was assessed on account of the bank, and here it is found as a fact that the payment will diminish assets available for payment to depositors. However, upon examination of the congressional committee reports involving the Revenue Act of 1938 in search for light on this matter, I find, in the conference report, the following language: "The liability of a bank * * * with respect to the deduction and withholding of taxes imposed upon others, *or as a transferee of the assets of others*, is not within the section in any event." (Italics supplied.) Therefore, although the Senate report used broader language, that is, "Section 22 of the Act of March 1, 1879 * * * provides an exemption *from Federal taxes* in the case of certain insolvent banks * * *," (italics supplied) I conclude that the congressional intent is expressed in the language first

above quoted from the conference report, that liability as transferee is not within the section and that the conclusion of the majority is correct. See Senate Report No. 1567, sec. 817, and the conference committee report, being House of Representatives Report No. 2330, Amendment 234, 75th Congress.

OPPER, *J.*, agrees with this concurring opinion.