## NEW JERSEY TITLE GUARANTEE & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 233, Docket 21629.

United States Court of Appeals
Second Circuit.

Argued June 6, 1950.

Decided June 19, 1950.

Louis Bort, of Jersey City, N. J. (Copal Mintz, of New York City, on the brief), for petitioner.

C. Oliphant, Chief Counsel, Washington, D.C., Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Petitioner seeks review of a decision of the Tax Court, 13 T.C. 674, one judge dissenting, holding that the exemption from payment of taxes granted insolvent state banks by I.R.C. § 3798, 26 U.S.C.A. § 3798, does not apply to such a bank's statutory liability to pay a tax as transferee of assets of one from whom the tax is due.

The Bank of Lafayette was merged in 1931 with petitioner, whose property and assets were taken over for liquidation by the Commissioner of Banking and Insurance of the State of New Jersey on February 14, 1939. The present question has arisen in connection with the liquidation, which still continues. Petitioner's assets are concededly insufficient for payment of its depositors in full. The Bank of Lafayette, at the time of the merger, held 100 shares of stock of the New York Mutual Telegraph Company. The latter's predecessor, the Mutual Union Telegraph Company, entered into an agreement in 1883 with the Western Union Telegraph Company, leasing the latter its entire telegraph system for a term of 99 years. In return Western Union was to pay Mutual Union the sum of $150,000 per annum for two years, and thereafter was to pay that sum pro rata to the stockholders of the mutual company.

During the tax year 1930 Western Union paid $150,000 to the stockholders of New York Mutual, $150 of this amount going to the Bank of Lafayette by virtue of its holding of 100 shares of stock. Subsequently the Commissioner of Internal Revenue assessed a deficiency of $653.04 in federal income taxes for that year against New York Mutual; but since the company has no property out of which its tax liability might be satisfied, the sum remains unpaid. The statute, passed originally as § 280(a) (1) of the Revenue Act of 1926 and now appearing as I. R. C. § 311(a) (1), 26 U.S.C. A. § 311(a) (1), authorizes the collection from a transferee of property of a taxpayer of the tax imposed upon the taxpayer; and stockholders in circumstances identical with those here have been held to be "transferees" within the meaning of this section. C. I. R. v. Western Union Tel. Co., 2 Cir., 141 F.2d 774, certiorari denied Western Union Tel. Co. v. C. I. R., 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581. Acting under this statute the Commissioner, on January 31, 1940, sent a deficiency notice to the Bank of Lafayette for payment of the tax to the extent of the assets received by it as transferee of New York Mutual.

The narrow question presented by this case is whether or not petitioner is exempted from payment of this $150 by I. R. C. § 3798 providing: "(a) Whenever and after any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall appear to him, is authorized to remit so much of the said tax against any such insolvent banks and trust companies organized under State law as shall be found to affect the claims of their depositors." The issue here is whether or not the tax is one assessed "on account of such bank" within the statutory

meaning, since petitioner concededly meets the other conditions of the statute.

It would seem from the terms of the statute that the tax must be considered as "assessed * * * on account of" the telegraph company, and not the bank, and that the collection will be of that tax, not of one against the bank. Moreover, in the light of the undoubted purpose of the statute to avoid competition by the United States as a tax gatherer with the losing depositors, Clinton Trust Co. v. United States, 52 F.Supp. 671, 679, 100 Ct.Cl. 348; Johnston v. United States, 17 Ct.Cl. 157, assets brought into the bank by transfer hardly appear to be in the same category with funds originally supplied by depositors and their proceeds, but should be considered as taken *cum onere*, subject to accrued taxes, rather than as a windfall for creditors. And there is nothing in the case law opposed, though reference has been made to certain discussions, chiefly in connection with the period of limitation and the remedies provided or made available by the transferee statute, I.R.C. § 311, as to the nature of the transferee's liability and whether it is properly denominated a tax. Thus compare Phillips v. C. I. R., 283 U.S. 589, 592-594, 51 S.Ct. 608, 75 L.Ed. 1289; Michael v. C. I. R., 2 Cir., 75 F.2d 966, 969, certiorari denied 296 U.S. 579, 56 S.Ct. 89, 80 L.Ed. 409; Oswego Falls Corp. v. C. I. R., 2 Cir., 71 F.2d 673, 676; Rite-Way Products, Inc., 12 T.C. 475, with United States v. Updike, 281 U.S. 489, 494–496, 50 S.Ct. 367, 74 L.Ed. 984; Routzahn v. Tyroler, 6 Cir., 36 F.2d 208, certiorari denied Tyroler v. Routzahn, 281 U.S. 734, 50 S.Ct. 248, 74 L.Ed. 1149; Henry Cappellini, 14 B.T.A. 1269, the first group suggesting that it is not a "tax," the second that it is. Actually most of these cases help us little on our present question, as to whether the liability, even if a tax, can be considered properly one on account of this bank within the particular statutory words here involved. One case is closer, however. Rite-Way Products, Inc., supra, upon which the Tax Court relied in its decision below. There the court held that transferee liability was not within the provisions of I.R.C. § 421, 26 U.S.C.A. § 421,

abating taxes assessed against persons who died in military service during the late war. Since, moreover, tax exemption statutes are to be strictly construed, Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; Bates Valve Bag Corp. v. Higgins, 2 Cir., 157 F.2d 886, 888, the construction urged by the Commissioner would seem in any event indicated.

But be this as it may, the question of legislative intent appears to have been set at rest by the legislature itself. I.R.C. § 3798 is an old statute, enacted before the days of income taxes or transferee liability therefor, being § 22 of the Act of March 1, 1879. It was, however, amended, at a time just before the bank insolvency here in question, by the Revenue Act of 1938, § 818, 52 Stat. 579, to continue the old provision as subsection (a), with the addition of three further subsections not immediately germane except perhaps the last, (d), which specifically excepts from the section any tax imposed by the Social Security Act. But the mention of these latter taxes, a direct burden on bank operations, has little bearing on the issue of transferee responsibility out of assets received. Most important, however, is the House report of the Conference Committee dealing with the bill which became law upon acceptance of the conference report. The Committee, after referring to the provision as to social security taxes, went on to say explicitly: "The liability of a bank, trust company, or trustee or agent thereof, with respect to the deduction and withholding of taxes imposed upon others, or as a transferee of the assets of others, is not within the section in any event." H. Conference Rep. No. 2330, 75th Cong., 3d Sess., 55, 56, 59; 1939-1 Cum.Bull., Pt. 2, 835. Petitioner argues that this construction is only that of one house of the legislature, and relies upon the absence of such language in the Senate report. But Rule XXVIII of the House requires a detailed statement to accompany a Conference report, while the Senate rules make no such requirement. Thus no inference can be drawn from the failure of the Senate conferees to comment on this matter; and since they say *nothing*

to contradict the definite statement by the House conferees, we take the latter as expressing the interpretation placed on the statute by both houses at the time of its final passage. - Hence the Tax Court properly held the tax liability here not within the statutory exemption.

Judgment affirmed.