WHITNEY MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10912.    Promulgated June 21, 1950.

*Percy W. Phillips, Esq.,* for the petitioner.
*Bernard D. Hathcock, Esq.,* for the respondent.

OPINION.

LeMire, *Judge*: The respondent's contentions with respect to the deduction of the South Carolina property taxes are that petitioner, being on an accrual basis, was required to accrue the full amount of taxes for each calendar year on January 1, when they accrued and became a lien upon the property under South Carolina law.

Petitioner's method of accruing the taxes month by month has been recognized as a sound accounting practice in a number of cases, including *Citizens Hotel Co.* v. *Commissioner*, 127 Fed. (2d) 229; *Commissioner* v. *Schock, Gusmer & Co.*, 137 Fed. (2d) 750; *Allen* v. *Atlanta Stove Works, Inc.*, 138 Fed. (2d) 452; *New Orleans Cold Storage & Warehouse Co., Ltd.*, 40 B. T. A. 121; and *Atlantic Coast Line Railroad Co.*, 4 T. C. 140.

The argument made by respondent in his brief carries the implication that petitioner is estopped to protest the adjustment made for 1942 since it failed to protest the similar adjustments which respondent made for 1940 and 1941. There is no element of estoppel in the situation here and no merit in this argument. It does not appear, nor is it

claimed, that petitioner ever made any misrepresentations to respondent or that in the final analysis it gained any benefit from the adjustments in prior years. Petitioner was, of course, not required to contest the adjustments of the prior years if it did not choose to do so.

We think that respondent was in error in disallowing the taxes accrued in 1942 in the amount of $9,490.

Respondent's disallowance of the unused excess profits credits carry-backs poses a more difficult question. His position on this issue is that the facts show a:

\* \* \* complete liquidation and *de facto* dissolution of petitioner's manufacturing business prior to the fiscal years ended March 31, 1943, and March 31, 1944, and that consequently there is no basis in equity or in common sense for setting up theoretical excess profits tax credits for those years as if that business were still in existence and carrying those credits back to the taxable year.

The respondent argues that section 710 (c) (3) (A), Internal Revenue Code, was not intended to apply to a business which had ceased to function. He relies principally upon *Wier Long Leaf Lumber Co.*, 9 T. C. 990; affirmed in part and reversed in part, 173 Fed. (2d) 549.

What the petitioner did in 1942 was to sell its principal assets and use the proceeds of the sale, for the most part, to pay its creditors. It made no liquidating distributions to its stockholders and took no steps to dissolve. To the contrary, it intended to continue and did continue its corporate existence and what remained of its business for several years.

We held in the *Wier Long Leaf Lumber Co.* case, *supra*, that a corporation which pursuant to a resolution to liquidate and dissolve had sold its principal assets and made liquidating distributions in 1942 and was in the process of liquidation in 1943 and 1944, was not entitled in 1942 to the benefit of any unused excess profits credit carry-back from 1943 and 1944 under the provisions of section 710 (c) (3) (A). That case was followed in *Rite-Way Products, Inc.*, 12 T. C. 475. On appeal to the Court of Appeals for the Fifth Circuit we were reversed in *Wier Long Leaf Lumber Co.*, *supra*, as to the year 1943, but affirmed as to 1944. The court held that the benefits of the carry-back provisions of section 710 (c) are not to be denied a corporation merely because it was in the process of liquidation; that there must be a further inquiry into the "circumstances and stages" of the liquidation; and that when the corporation is "a corporation in name and semblance only, without corporate substance and serving no real corporate purpose, it must, though not formally dissolved, be treated as dissolved *de facto*." The rule as thus modified by the court was applied in *Gorman Lumber Sales Co.*, 12 T. C. 1184, and *Winter & Co. (Indiana)*, 13 T. C. 108.

On the facts disclosed by the evidence here, it can not be said that petitioner in 1943 and 1944 was a corporation in name only and without corporate substance. It was in every sense a real corporation with a going business. Although its principal business, and the business for which it had been organized, the manufacture of cotton textiles, was discontinued in 1942, its corporate charter and all the rights and privileges of incorporation were retained. Petitioner took no steps to dissolve at the time of the sale of its manufacturing assets and, so far as the evidence shows, had no intention of dissolving. During all of the years 1943 and 1944 petitioner continued to operate the store as a going business under its original corporate charter. It made no liquidating distributions to the stockholders in any of the years under consideration. Thus, it must be found on the evidence that petitioner was not in the process of liquidating in 1943 and 1944.

A case involving facts more closely resembling those in the instant case is *Bowman* v. *Glenn*, 84 Fed. Supp. 200. There a corporation which sold the major portion of its assets in October, 1944, but continued its corporate existence and took no steps toward dissolution until October, 1945, was permitted to carry back the unused excess profits credits originating in 1945 and 1946 to 1943 and 1944.

There is no evidence here, nor does respondent contend that the petitioner delayed its liquidation and continued to operate its store during 1943 and 1944 for the purpose of gaining the advantage of the unused excess profits credit carry-back.

On the facts in this case we think that petitioner is entitled in 1942 to a carry-back of its unused excess profits credits for 1943 and 1944 in the respective amounts of $47,052.60 and $46,875.55, as stipulated.

Reviewed by the Court.

*Decision will be entered under Rule 50.*