**JUD PLUMBING & HEATING, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**JUD v. SAME (two cases).**

**No. 11481.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1946.

682

A. N. Moursund, of San Antonio, Tex. for petitioners.

Richard H. Forster, of Los Angeles, Cal., for amicus curiæ.

Harold C. Wilkenfeld and J. Louis Monarch, Sp. Assts., to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both 'of Washington, D. C., for respondent.

Before McCORD, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Ed. J. Jud was the President and owned substantially all of the capital stock of Jud Plumbing & Heating, Inc., a corporation under the laws of Texas, which corporation was dissolved on September 5, 1941. In the dissolution all assets of the Corporation were transferred, as of August 31, 1941, to the chief stockholder, Jud, who assumed all of its obligations, with the result that the contracts which the Corporation had begun before its dissolution were continued and completed without interruption.

From the year 1933 to the date of its dissolution the Corporation had made its income tax returns from the "completed contract" or "job cost" method of accounting as to all income from contracts where the amount involved exceeded $100. This method of accounting enabled the corporation accurately to ascertain and report the profit derived from each contract, and apparently had been satisfactory to the Commissioner of Internal Revenue throughout former years.

Upon the dissolution of the Corporation Jud not only completed the existing contracts of the Corporation, but undertook to continue the same method of accounting, holding the view that since the Corporation would not have reported or accounted for income on any of the contracts until same had been completed, and since it had not completed the contracts involved, and had transferred all of its assets, including its profits, it, therefore, was not required to account, in whole or pro tanto, for any unrealized and undetermined profits under any of the contracts which the Corporation had begun but which Jud, as an individual, had completed; and since he had succeeded to all assets and liabilities of the Corporation, he should likewise account for the profits on each of the contracts when ascertained upon completion; that completion of contract determined not only income but liability for the tax on such income.

Jud and his wife reported, on the community basis, the net income from all of the contracts of the Corporation which Jud had completed within the tax year, and they insist that since the Corporation made no completions of these contracts it realized no profits and had no income to report therefrom, and no taxes to pay thereon.

Income from repair work, or from jobs which did not exceed $100, was reported

and accounted for on the cash basis and is not involved in this controversy.

The Commissioner computed the gross income of the Corporation so as to include the sum of $32,854.06 as its income for the year 1941 which had accrued to it out of the contracts which it had begun but which it had not completed at the time of its dissolution. The Commissioner did not reject the completed-contract method of accounting that had been previously followed by the Corporation, but thought that such a method of accounting, under the facts in this case, did not reflect the income that should be allocated to the Corporation.

The Commissioner recognized the right of the taxpayer to adopt and follow the method of waiting until the completion of the contract in order to ascertain the profits therefrom, but rejected the contention that none of the income from the contracts so completed was allocable to the Corporation. The Commissioner used the completed-contract method to ascertain the profits, but then computed, by what he considered an equitable and proper method, the portion of the income from such contracts that should be charged to the Corporation. This method was to determine the total cost incurred for each job prior to the transfer, by ascertaining from the books of the Corporation and from the books of Jud the items in each job that the Corporation and its successor each had paid. He thus determined the total cost of each completed job, as well as the profits therefrom. The percentage of job cost paid by the Corporation to the total cost was ascertained as determinative of the percentage of completion of the contract by the Corporation. This percentage of completion so obtained was then applied to the ultimate profit so as to ascertain, or to approximate, the income that had accrued to the Corporation at the time of the transfer of its assets and liabilities to its chief stockholder.[1]

The Corporation had twenty-two uncompleted contracts at the time of its liquidation. There was an ultimate profit in all except two, but the profit or loss from eighteen of these contracts was so inconsequential that the Commissioner disregarded them and made his determination only on four which involved substantial sums and which were all completed within the same tax year as the corporate dissolution.

It is not disputed that the transfer of the assets rendered the Corporation insolvent, and that if the Corporation is liable for taxes, its transferees are likewise liable. Nor is the question as to whether or not the Corporation realized a capital gain or a capital loss by the transfer involved here.

It is conceded, also, that the Corporation, prior to its dissolution, received progress payments from its contracts as the work went forward. These payments would be a part of the gross income of the Corporation unless the dissolution or transfer would otherwise alter their character.

The Tax Court upheld the Commissioner.

The question involved is whether, under the completed-contract method of accounting which had been used by a corporation in previous years, such corporation was liable for taxes on income, earned during the year of its dissolution, from long-term contracts entered into by it but completed by its successor after the dissolution of the corporation; and whether the Commissioner used, and the Tax Court approved, an erroneous method of accounting, under Secs. 41, 42, and 45, Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code §§ 41, 42, 45, in allocating income for the year of dissolution between the Corporation and its successor,

[1] The computation of the Commissioner on the four contracts was:

| Name of Job Cost Account | Costs Incurred to August 31, 1941 | Total or Final Cost | Per Cent Completed August 31, 1941 | Total Profit | Profit to August 31, 1941 |
|---|---|---|---|---|---|
| Lincoln Courts | $68,334.97 | $69,785.15 | $97.70 | $13,861.55 | $13,573.23 |
| Victoria Courts | 97,968.03 | 154,765.95 | 63.30 | 22,304.61 | 14,118.82 |
| Temporary Buildings, Randolph Field, Texas | 10,736.02 | 18,219.63 | 58.93 | 8,344.37 | 4,917.34 |
| Fred Poage | 1,041.02 | 2,362.78 | 44.06 | 555.32 | 244.67 |
| | | | | | 32,854.06 |

based upon the relative percentages that the cost paid by the Corporation during that part of the tax year prior to its dissolution and the cost paid by its successor after dissolution each bore to the profit from the completed contracts.

Sec. 41 of the Internal Revenue Code, '26 U.S.C.A. Int.Rev.Code, § 41, provides that the net income should be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, but that if the method employed does not clearly reflect the income, the computation should be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income.

Sec. 42 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 42, provides that all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer unless under some other lawful method of accounting such amounts are to be properly accounted for at a different period, and in case of the death of the taxpayer, the net income accruing up to the date of his death shall be computed as his net income unless it is properly includable in some other tax period.

Sec. 45 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 45, authorizes the Commissioner to distribute, apportion, or allocate gross income or deductions between two or more organizations, trades, or businesses owned or controlled directly or indirectly by the same interests, if he determines that some distribution, apportionment, or allocation is necessary in order to prevent an evasion of taxes or clearly to reflect the income of such organizations, trades, or businesses.

Appropriate Treasury regulations relating to the use of the completed-contract method of accounting have been promulgated.[2]

■ The Sixteenth Amendment gave Congress the power to lay and collect taxes on incomes from whatever source derived, and we agree with the Tax Court that it is a fundamental concept of taxation that income is chargeable to him who earns it, in the absence of statutory exemption or provision to the contrary.

■ It should be apparent that a corporation, by a transfer of all of its assets and liabilities, cannot absolve itself from liability for income taxes due to the United States, and that any right to an exemption from reporting income received by the taxpayer must be found in the federal law, rather than in the acts of the taxpayer.

■ A corporation being a separate legal entity, its net earnings, whether ascertained or not, belong to it, and the tax upon unexempt income in each taxable year is chargeable to it, Sec. 13(b) Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 13(b), and this liability cannot be discharged by the simple expedient of dissolution and the turning over of all its assets, including current and unreported income, to its sole stockholder, even though such corporation receives no money consideration for the transfer of such income. It is the actuality of income rather than its disposition that is important in determining the tax consequence.

■■ A taxpayer has the option of reporting his income on either a cash, accrual, or completion-of-contract, basis if the method selected clearly reflects his income. But where a corporation: (a) carries on a business for two-thirds of the taxable year; (b) thereupon dissolves; (c) assigns and transfers all of its assets and liabilities to its chief stockholder; and (d) makes no return of its income; an annual return made by the corporation's chief stockholder and his wife, on the community basis, wherein they charge themselves with the net profits that they and the Corporation had earned during the tax year, could not be said to be such a method of accounting as would clearly reflect the income of the Corporation.

---

[2] "Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. * * * Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon either of the following bases:

"(a) Gross income derived from such contracts may be reported upon the basis of percentage of completion, * * *

"(b) Gross income may be reported for the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, *provided such method clearly reflects the net income. * * *.*" [Italics supplied.] [Sec. 19.42–4, Treasury Regulations 103.]

■ In the absence of a statute that compels such a result the courts should not undertake to bestow upon a corporation the privilege of having its income reported by the community as if it were a participant in the marital relation. To sustain the Petitioner's contention here would be in disobedience of this principle. This statement may be dictum but it serves to demonstrate the unsoundness of any effort to avoid the charging of corporate income taxes to other than the corporation.

■ If the Corporation's income was not returned in a manner that would clearly reflect its income, such a return need not be accepted by the Commissioner, regardless of the method of accounting used. The Commissioner has definite statutory authority, Secs. 41, 42, and 45, Internal Revenue Code, not only to reject the method but to require the use of a method that does clearly reflect such income.

■ Without doubt, a taxpayer, ordinarily, has the right to adopt the completed-contract method of accounting where such method clearly reflects his income, but it cannot avoid taxes by the simple expedient of not completing its contracts; and where a corporation puts itself in such position that it could never complete its contracts, it is in no position to insist that even if it had income it has no tax liability, or that its tax liability can be measured only by completed contracts.

Moreover, the Commissioner followed the completed-contract method in that he has computed profits only from contracts that were completed, during the taxable year, by the Corporation's successor. Instead of striking down that method of accounting he has recognized and followed it, but because of the dissolution and death of the Corporation he has found it necessary to allocate the income so as to reflect that which belonged to the Corporation—a detail which the completed-contract method of accounting by the transferees did not supply.

■ The completed-contract method of accounting determines profits, but it does not always, necessarily and conclusively, determine legal rights to those profits, nor the tax liabilities thereon. "Ascertainment of income" is chiefly a matter of accounting. "Allocation of income" is chiefly a matter of the application of income tax law to basic legal rights. The terms are not synonymous.

■ The Petitioners have defended a method of accounting that in actuality has not been assaulted. They have decreed a method of allocation, or apportionment, of income as improper, meanwhile failing either: (a) to show that the method produced an illegal, or a substantially inaccurate, result; or (b) to suggest a better method.

The decisions of the Tax Court are affirmed.