**DILLARD–WALTERMIRE, Inc.**

v.

**Ellis CAMPBELL, Jr., District Director of Internal Revenue.**

**No. 17060.**

United States Court of Appeals Fifth Circuit.

May 23, 1958.

Rehearing Denied July 9, 1958.

Kiel Boone, Cecil L. Smith, Kilgore & Kilgore, Dallas, Tex., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Morton K. Rothschild, Attys., Dept. of Justice, John C. Ford, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before TUTTLE, BROWN and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment of the trial court without a jury finding in favor of the defendant District Director of Internal Revenue in a suit for refund of federal income taxes.

Appellant is engaged in the business of drilling oil and gas wells under contract. It reports income from drilling contracts on a completed contract basis; that is, it is not entitled to any of the contract price unless the well is drilled to the prescribed depth in accordance with the contract. Compensation is not, of course, dependent upon the discovery of oil or gas, but it is dependent upon the overcoming by appellant of all the hazards of drilling to great depths, which are substantial.

On December 1, 1951, appellant sold seven drilling rigs to a partnership consisting of the stockholders of appellant whose interests in the partnership were proportionate to their stock ownership in appellant. Appellant also sold and transferred five partially completed contracts to the partnership, which paid book value for the rigs and the cost to date of the work on the five contracts which appellant claimed averaged 52.57% of completion and which appellee computed on a weighted basis [1] as being approximately 65 percent completed overall. The drilling contracts were all successfully completed, four within the month of December and the fifth in February. The contracts produced a profit of $179,-000, all of which was reported as income by the partners, none, of course, having been reported by the appellant, the original contractor and assignor of the partially completed contracts. The Commissioner of Internal Revenue, acting under the authority of Section 41 and Section 45 of the Internal Revenue Code of 1939,[2]

---

1. The contracts were, of course, for different amounts. The largest, for which much the greatest profit was earned, was between 85 and 95 percent completed. The government computed the percentage of completion by taking the proportion of footage drilling and "day work" done prior to December 1st to the footage and day work thereafter to completion.

2. "Internal Revenue Code of 1939:
   "§ 41 General Rule.

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as

allocated $118,000 of the $179,000 profit to the corporate taxpayer, claiming that this allocation was proper because it was necessary both "clearly to reflect the income" of the two businesses and "to prevent the evasion of taxes." The tax assessed on this additional income was paid and, following the disallowance of timely filed claims for refund this suit for refund of the tax was filed. In an abbreviated but adequate memorandum decision the trial court found:

"* * * I find the facts to be gentlemen, as agreed in the stipulation; plus a finding that this was the transfer by the Plaintiff to individuals of drilling oil well contracts and the majority of which had been almost completed. All of this occurred within the term of the taxable year of the Plaintiff here * * * ."

"I find as facts, of course, gentlemen, that the work that had been done upon these contracts for these particular wells were and was satisfactorily done and almost completed on each well. In all of which wells there was a considerable profit. And I believe, gentlemen, as a conclusion of law that the Government should recover in this case and the Plaintiff should take nothing."

The appellant vigorously contends that the action of the Commissioner in reallocating income between these two related taxpayers amounts to a compulsory change of appellant's accounting method which it had uniformly followed, i. e., the completed contract method, in that it in effect amounted to a determination that the percent of the profit represented by

the percentage of completion was reportable as income as of December 1st. This is a misconception, we think, of the theory of the reallocation statute. As we said in Jud Plumbing & Heating, Inc., v. Commissioner, 5 Cir., 153 F.2d 681, 685:

"The completed-contract method of accounting determines profits, but it does not always, necessarily and conclusively, determine legal rights to those profits, nor the tax liabilities thereon. 'Ascertainment of income' is chiefly a matter of accounting. 'Allocation of income' is chiefly a matter of the application of income tax law to basic legal rights."

Here the Commissioner's action did not require the accrual as of December 1st, the date of the transfer, of any of the profits ultimately earned. It permitted them to be accrued when, under the appellant's method of accounting, they would normally do so when the contracts were completed. When they were completed and the profits were unmistakably earned, the Commissioner considered under all the circumstances here present that 65% of them were truly earned by the corporate taxpayer and only 35% by the new partnership.

█ As is apparent from a reading of the statute, there is reposed in the Commissioner some degree of discretion in making the determination whether a reallocation should be made. As to the weight to be given to such determination, this Court, in Grenada Industries, Inc., v. Commissioner, 5 Cir., 202 F.2d 873, certiorari denied 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345, approved the standard announced by the Tax Court in

in the opinion of the Commissioner does clearly reflect the income. * * * "
(26 U.S.C. 1952 ed., Sec. 41)

"§ 45 [As amended by Sec. 128(b) Revenue Act of 1943, c. 63, 58 Stat. 21]. Allocation of Income and Deductions.

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the

Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."
(26 U.S.C. 1952 ed., Sec. 45)

that case, 17 T.C. 231, on page 255, where it was said:

"It has been said many times that the Commissioner has considerable discretion in applying section 45, and that the determinations required of him under the statutes must be sustained unless that discretion has been abused. Our review of those determinations is not de novo, and we may reverse them only where the taxpayer proves that they are unreasonable, arbitrary, or capricious."

 The appellant undertook to prove absence of a tax motive in order to negative the claim of tax evasion. Even satisfactory proof of a business reason for the transfer of these partially completed contracts to the identical interests freed of any obligation to bear the corporate tax would not be an answer to the Commissioner's claimed right to make the allocation. The statute permits such allocation if the result more clearly reflects the true income of the related businesses. We have held in Jud Plumbing & Heating, Inc., v. Commissioner, supra, that in a situation similar to this a similar allocation by the Commissioner was proper. That case is not to be distinguished, as is attempted by appellant, by reason of the fact that partial payments were made currently on the contract in the Jud case, whereas no payments were due appellant here until the contracts were completed. Presumably any contract for construction is a unit and the contractor must perform the entire contract before the owner is obligated on a final accounting to pay anything. The fact that the parties in the plumbing contract were willing to *advance* sums during performance does not change the legal relationship between the parties or the time of accrual of the profits.

The case of Standard Paving Co. v. Commissioner, 10 Cir., 190 F.2d 330, 333 certiorari denied 342 U.S. 860, 72 S.Ct. 87, 96 L.Ed. 647, is a similar case and is in complete accord with the Jud Plumbing decision. It dealt with the transfer to the parent upon dissolution of a wholly owned corporation, of partially completed paving contracts. "To permit this" without reallocation of a percentage of the profits to the corporation, said the court, "would enable the parent corporation to evade taxes by dissolving a subsidiary which had realized income from incompleted long term contracts." The words "realized income" were of course used by the Court there in a common-sense business sense, and not in a technical tax or accounting sense.

We think the trial court was fully justified in its findings and conclusions based thereon.

The judgment is affirmed.