**TENNESSEE LIFE INSURANCE COMPANY, Appellant,**

v.

**R. L. PHINNEY, District Director of Internal Revenue at Austin, Texas,**
**Appellee.**

No. 18160.

United States Court of Appeals
Fifth Circuit.

June 13, 1960.

Rehearing Denied July 15, 1960.

Cameron, Circuit Judge, dissented.

Robert K. Jewett, Houston, Tex. (Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel), for appellant.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C., Kenneth Key Hoffman, Asst. U. S. Atty., San Antonio, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., Lee A. Jackson, Atty., Dept. of Justice, Wash., D. C., Charles K. Rice, Asst. Atty. Gen., A. F. Prescott, John J. Pajak, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal tests the correctness of the Internal Revenue Commissioner's denial of a deduction of real estate taxes to one of two wholly owned subsidiaries under the provisions of Section 45 of the Internal Revenue Code of 1939 as Amended, 26 U.S.C.A., Internal Revenue Code of 1939, § 45, when the owner corporation, on January 1st, the date the lien for taxes attached, conveyed the property under a liquidation on January 19th to the second wholly owned subsidiary corporation.

The facts are not in dispute. On January 1, 1953, Tennessee Gas Transmission Corporation (T.G.T.) owned two subsidiaries, Tennessee Gas Building Corporation (Building Company) and Tennessee Life Insurance Company (Life Company). On that date Building Company was the owner of the Commerce Building in Houston, Texas. The Life Company was a "life insurance company" within the meaning of the Internal Revenue Code of 1939. On January 19, 1953, T.G.T. transferred all of the outstanding capital stock of Building Company to the Life Company as a contribution to capital. On the same day Building Company adopted a plan of complete liquidation and dissolution under which, on that date, it transferred all of its assets, subject to its liabilities, to Life Company. It was formally dissolved on January 23, 1953.

It was stipulated between the parties:

"During each of its said taxable years 1951 and 1952, Building Corporation made monthly entries on its books of account for the pro-rata estimated expenses for ad valorem taxes of each such monthly period. Monthly statements of profit and loss of Building Corporation, reflecting the entries made to its books of account, were prepared, but were not communicated to any third party or published."

On January 19, 1953, just prior to its liquidation, there was entered on the books of account of Building Corporation an estimated liability of $152,340 for ad valorem taxes which would be assessed for the calendar year 1953 against the properties held by it on January 1, 1953. The amount of such ad valorem taxes

later actually assessed was $143,570. Although the assessments were not made until sometime subsequent to January 23rd, it is not disputed that under the Texas law 1953 ad valorem taxes became a lien on the property and became the personal liability of the owner of the property on January 1st of that year.

In the tax returns filed by Building Company for the short year commencing January 1st and ending on January 23, 1953, Building Company reported income represented by rents from tenants of the Commerce Building for the month of January, 1953. It claimed a deduction of the total amount of $143,570 of ad valorem taxes assessed in 1953 for that calendar year.[1] Building Company claimed a net operating loss for the short year, principally as a result of the large item of a year's ad valorem taxes when matched against one month's income from the building.

The Commissioner adjusted Building Company's return for the short year 1953 by adjusting the rentals so as to include 18/31sts thereof and by allowing a deduction for ad valorem taxes in the amount of $7,080. This represented 18/365ths of the total amount of $143,570 of ad valorem taxes for the year 1953.

Thereafter, Life Company, as transferee of Building Company, filed a claim for refund of income taxes paid in respect to Building Company's taxable year 1952 on the ground that Building Company had sustained a net operating loss for the short year 1953, and was thus entitled to carry the loss back to 1952. This claim was disallowed, and this suit for refund followed.

The District Court sustained the Commissioner, holding that the adjustments as made were warranted under the provisions of Section 45 of the Internal Revenue Code of 1939 in order clearly to reflect the income of the two wholly owned subsidiaries.

Appellant here argues that until modified by the provisions of the 1954 Internal Revenue Code [2] only the taxpayer that owned real property on the date a particular year's taxes became a lien or became the personal obligation of the taxpayer could take a deduction for ad valorem taxes; that, therefore, as between nonassociated taxpayers, dealing at arm's length, it would not be possible for the transferee, here represented by the Life Company, to take a deduction for that part of the real estate taxes corresponding with that part of the year 1953 following the transfer on January 19th; therefore, the Commissioner's attempt to "allocate" the ad valorem taxes by disallowing all but 18/365ths of the 1953 taxes amounted to a disallowance of much the greatest part of the tax deduction rather than an allocation as between the Building Company and the Life Company. This follows, appellant contends, since, under the 1939 Code, only the taxpayer of record on January 1st could take a deduction for real estate taxes, the Commissioner did not have the power to give this deduction to the transferee corporation under the allocation section.

The government does not dispute the basic premise, that is, under the 1939 Code where two unrelated corporations dealt with real property in Texas during an ad valorem tax year (here the calendar year 1953), the purchaser of the property could not take as a deduction any amounts which it paid to discharge the ad valorem tax lien against the property, whether such payment was made by it by agreement between the parties or in order to prevent a foreclosure of the tax lien. The Supreme Court case of Magruder v. Supplee, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555, clearly establishes this proposition.

The government contends, however, that the authority granted to the Commissioner by Section 45 is intended to

---

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
     *     *     *     *     *     *     *
  "(c) Taxes generally.

"(1) Allowance in general. Taxes paid or accrued within the taxable year * * *." 26 U.S.C.A. § 23(c) (1).

2. See 26 U.S.C.A. § 164 and § 461(c) (1).

permit allocations as between related taxpayers when necessary to reflect the true income as between such taxpayers, even when the result of such allocation is to allocate either income or deduction to a taxpayer which, under other sections of the Internal Revenue Code, would not legally be entitled to give it such treatment. In other words, the Commissioner contends that the principle of Magruder v. Supplee is binding only *absent a reallocation of deductions* under the authority of Section 45.

We are constrained to agree with the position taken by the Commissioner and supported by the judgment of the trial court. In concluding as we do we recognize that we must differ, however reluctantly, with the decision of the Court of Appeals for the Sixth Circuit in Simon J. Murphy Co. v. Commissioner, 6 Cir., 231 F.2d 639, 642.

In addition to the ground principally urged by the Commissioner and made the basis of the trial court's decision, we feel that we are bound by two previous decisions of this Court to conclude, contrary to the views of the Court in the Murphy case, that the Texas ad valorem taxes here involved were neither "paid or accrued" during the short tax year, except to the extent allowed by the Commissioner. These two cases are Citizens Hotel Co. v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 229, a Texas case, and Allen, Collector v. Atlanta Stove Works, Inc., 5 Cir., 138 F.2d 452, a Georgia case involving the same state tax principles.

We think the basic error in the contention of the appellant is its assumption that because Texas ad valorem taxes became a lien and became the personal obligation of the Building Company on January 1, 1953, they "accrued" on that date. We have expressly held to the contrary in Citizens Hotel Company, supra. It is undisputed that the taxes were not "paid" during the short year. The only other basis for Building Company's right to deduct them, therefore, would be their "accrual" prior to January 19, 1953. We think it clear that the terms "pay or accrue" relate to the method of accounting

used by a taxpayer. In order for a *cash* basis taxpayer to be permitted to deduct taxes he must have actually paid them during the tax year. In order for an *accrual* basis taxpayer to be permitted to deduct them, he must, under the accrual system of accounting, accrue them on his books. Here, to be sure, Building Company entered the estimated amount of the entire 1953 ad valorem taxes on its books prior to dissolution on January 23rd. This, however, was inconsistent with the accrual method of accounting which taxpayer had followed in the previous years of its existence. It is stipulated that during the years 1951 and 1952 taxpayer accrued 1/12th of the estimated ad valorem tax on its books each month. This is strictly in accord with the accrual method of accounting as described in Judge Sibley's opinion in the Citizens Hotel Company case, supra. There the opinion stated [127 F.2d 230]:

> "The taxpayer's books are kept on a general accrual basis, and this annual tax charge is distributed by months over the year. The amount of it has to be estimated until the tax is determined, and an adjustment is made thereafter. This is conceded to be good accounting practice, and we think it clearly reflects the true income for a period less than a year."

In that case the Commissioner sought a holding that in Texas the entire ad valorem tax *accrued* on January 1st. We expressly rejected that proposition by stating:

> "It is true that in Texas property taxes are a personal liability of the owner measured by the value of the property which he owns on January 1. The assessments of values are made up at a later time in the year, as are the rates of County and City tax for the year, and then the amount of tax due by each taxpayer is arrived at and put on the tax rolls. The County tax rate was not fixed in this instance till August 16, 1937, and the City tax rate September 29, 1937. *If a strict date of accrual*

*must be adhered to, it would have to fall after the tax rates were fixed, for* until then a necessary ingredient of the tax liability was lacking, and no tax demand could be formulated. But we think no such strict date can be insisted on. As is fully explained in United States v. Anderson, 269 U. S. 422, 46 S.Ct. 131, 133, 70 L.Ed. 347, the accrual basis for income tax returns was introduced to facilitate a true reflection of business incomes according to sound accounting principles; and the taxpayer's bookkeeping, if in accordance with such principles and truly reflecting net income, is allowed to be used as a basis of returns." (Emphasis added.)

In a Georgia case where the law as to the creation of a lien and the creation of the personal liability is identical with that in Texas, we held precisely the same thing in the Atlanta Stove Works case, supra. ·In an opinion, also written by Judge Sibley, this Court held [138 F.2d 452]:

"Until a tax rate is fixed, the inchoate tax 'lien and debt cannot be said to have accrued."

Whatever may be understood under the Texas law to be the effect of the obligations and liabilities created as against real estate and its owners on January 1st, we think it clear that this Court has expressly held that there has been no "accrual" of an. entire year's taxes in the sense in which the term is used in the Internal Revenue Code except as such taxes are "distributed by months over the year," since this is truly an accrual method of accounting. It is not disputed that this taxpayer was on an accrual basis.

We are thus forced to the conclusion that only such part of the annual tax burden for 1953 as would be shown to be due under the usual method of accounting adopted by Building Company comes within the deduction of "taxes paid or accrued" within the tax year.

Moreover, even on the broader ground, we are satisfied that the right of the Commissioner to apportion or distribute deductions or income under Section 45 is not restricted to such apportioning or distribution as would be permissible for two unrelated taxpayers under existing taxing statutes. This is implicit in the holding of this Court in Jud Plumbing & Heating, Inc. v. Commissioner, 5 Cir., 153 F.2d 681, and Dillard-Waltermire, Inc., v. Campbell, 5 Cir., 255 F.2d 433. In both of those cases the taxpayer had consistently followed the "completed-contract" method of accounting. There was no doubt about the right of those taxpayers to follow that method of accounting. In fact, once having adopted that method they could not, without the consent of the Commissioner, change it. What the corporations did, in transferring partially completed contracts to related persons without accounting for any of the subsequently received payments on completion would thus have been required under the applicable statutes if the transferors and transferees had been unrelated persons. The transferor could not have reported the income which, under its accounting system, it had not become entitled to. But, since the control over the transferor and transferee in each case was held by one who could effect this obvious distortion of income, this Court held that Section 45 gave the Commissioner the power to reallocate the income in a way that unrelated parties could not have done.

█ We think the authority granted in Section 45 permits the Commissioner to deny to one of two related taxpayers such part of a deduction as is necessary to prevent the true taxable income to be distorted, and to allocate a deduction to a taxpayer which, absent the authority of Section 45, would not be entitled to claim such deduction. There is nothing in the Magruder v. Supplee case that is inconsistent with this holding.

We, therefore, conclude that the judgment of the District Court was right. It is affirmed.

CAMERON, Circuit Judge (dissenting). .

I respectfully dissent from the opinion of the majority affirming the judgment of the district court. The case of Magruder v. Supplee, May, 1942, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555, is, in my opinion, directly controlling in the case before us. This is inescapably true, unless it is the purpose of the tax officials that nobody shall receive the benefit of deduction of the large amount of taxes actually paid on this real property.

The Court of Appeals for the Sixth Circuit had before it a case identical with this one in the legal principles involved, Simon J. Murphy Co. v. Commissioner of Internal Revenue, 1956, 231 F.2d 639. The Commissioner raised every point in that case which appellee relies upon here and every point was decided in favor of the taxpayer. It is the only case cited by either party which applies to the facts before us. The majority declines to follow the Murphy case, but I find its reasoning unanswerable and I think we should follow it.[1]

The cases cited by the majority[2] do not, in my opinion, apply to the facts before us nor tend to dilute the doctrines of Supplee and Murphy. There is no contention that the transaction here involved was not bona fide in every respect and that it did not serve a useful purpose. Upon principle and the authority of these two cases, I think the appellant is entitled to recover and that we should reverse the judgment of the district court and render one here in appellant's favor.

Rehearing denied.

CAMERON, Circuit Judge, dissenting.

1. That decision was rendered nearly two years before this action was begun and the Treasury Department failed to apply for certiorari, thus tacitly acquiescing in its holdings.

2. Citizens Hotel Co. v. Commissioner, 5 Cir., 1942, 127 F.2d 229; Allen, Collec-

tor v. Atlanta Stove Works, Inc., 5 Cir., 1943, 138 F.2d 452; Jud Plumbing & Heating, Inc. v. Commissioner, 5 Cir., 1946, 153 F.2d 681; and Dillard-Waltermire, Inc. v. Campbell, Jr., District Director, 5 Cir., 1958, 255 F.2d 433.