THE DORIC COMPANY, TRANSFEREE OF KELLERBLOCK CORPORATION, (DISSOLVED), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92774.   Filed September 19, 1963.

*Warren V. Clodfelter*, for the petitioner.
*Wilford H. Payne*, for the respondent.

### OPINION

RAUM, *Judge:* Respondent determined the following deficiencies in income taxes against the Doric Co., as transferee of the assets of Kellerblock Corp. (dissolved) :

| Year | Amount |
| --- | --- |
| Fiscal year ended Oct. 31, 1955 | $4, 062. 96 |
| Fiscal year ended Oct. 31, 1956 | 5, 238. 73 |
| Fiscal year ended Oct. 31, 1957 | 9, 300. 21 |
| Period Nov. 1, 1957, to Jan. 31, 1958 | 19, 779. 33 |

The only issue remaining for determination is whether the Kellerblock Corp. was entitled to deduct in computing its taxable income for the period November 1, 1957, to January 31, 1958, all of its property taxes for the calendar year 1958 or merely that portion of such taxes allocable to the period November 1, 1957, to January 31, 1958.

All of the facts have been stipulated.

Petitioner, the Doric Co., is a corporation organized under the laws of the State of Washington, with its principal office in Seattle. It is a transferee of the assets of the Kellerblock Corp., and is liable for any deficiencies in income tax, plus statutory interest thereon, which may be determined to be due with respect to Kellerblock.

During the taxable years Kellerblock owned and managed the Grosvenor House Apartments in Seattle. It kept its books of account and prepared its income tax returns on an accrual method of accounting with a fiscal year ending on October 31 of each year.

The Doric Co. acquired the outstanding shares of stock of Kellerblock at various times in 1957 and 1958. It took over the full control of Kellerblock, including the management of its properties and direction of its affairs, in the early part of 1958.

Kellerblock filed a separate income tax return for the short period from November 1, 1957, through January 31, 1958, after which time its income and expenses were included in the consolidated returns of its parent corporation, the Doric Co., and subsidiaries, until Kellerblock was dissolved effective May 29, 1959. Kellerblock filed its separate income tax returns for the fiscal years ending October 31, 1955, 1956, and 1957, and for the short period ending January 31, 1958, with the district director of internal revenue at Tacoma, Wash.

On its return for the period November 1, 1957, to January 31, 1958, Kellerblock reported a net operating loss of $23,188.16. Thereafter, on March 12, 1959, it filed an application for tentative carryback adjustments for prior years as a result of the foregoing net operating loss, and received refunds aggregating $10,051.94 for taxes and interest in respect of its fiscal years ending October 31, 1955 and 1956.

In his deficiency notice to the Doric Co., transferee of Kellerblock, dated March 17, 1961, the Commissioner made adjustments to the income and expenses as shown in the return of Kellerblock for the period from November 1, 1957, through January 31, 1958, which eliminated the reported loss for that period and consequently the loss carrybacks to the years ended October 31, 1955, and October 31, 1956.

On its income tax return for the period November 1, 1957, to January 31, 1958, Kellerblock claimed as deductions real estate taxes with respect to the Grosvenor House Apartment property in the amount of $59,694 and personal property taxes in the amount of $1,080, totaling $60,774. These amounts represent the taxes which were levied during the calendar year 1958, and for which Kellerblock, as the owner of the property on January 1, 1958, was liable. The personal property was listed and valued by the county assessor on May 20, 1958. The taxes were subsequently billed to Kellerblock, and became payable, one-half on or before April 30, 1959, and the other half on or before October 31, 1959. The bills were entitled "1959 Real Estate Tax Statement" and "1959 Personal Property Tax Statement," respectively. The first one-half of the real estate taxes ($29,847) and the first one-half of the personal property taxes ($540) were in fact paid on May 26, 1959, and the remaining one-half portions of these taxes were in fact paid on October 30, 1959. The aggregate of such real and personal property taxes thus paid was $60,774.

In determining the deficiency for the 3-month period ended January 31, 1958, the Commissioner disallowed as a deduction $45,580.50 of the amount of $60,774 claimed for real and personal property taxes with the following explanation:

It is held that the allowable deduction for real and personal property taxes for the taxable year November 1, 1957, to January 31, 1958, is limited to a pro rata portion of the annual real and personal property taxes incurred.

The amount of $60,774 for real and personal property taxes was not accrued on the books of account of Kellerblock for the 3-month period ending January 31, 1958. Rather, it was and had been the practice of the corporation over the period of its operations to accrue on its books of account each month one-twelfth of the estimated amount of taxes for the current year, based upon the previous year's experience, and for the last month of each taxable year to make necessary balancing adjustments so as to reflect the correct total amount applicable for the year. In the schedule supporting its tax return for the 3-month period ending January 31, 1958, the corporation made the following explanation:

SCHEDULE M, LINE 6—ADJUSTMENTS FOR TAX PURPOSES NOT RECORDED ON BOOKS
Real and personal property taxes accrued January 1, 1958, payable in 1959, deferred for accounting purposes_____ $60,774.00

Petitioner contends that Kellerblock is entitled in the short period November 1, 1957, to January 31, 1958, to deductions for real and personal property taxes in the amount of $60,774. It argues that section 164 of the 1954 Code provides that there shall be allowed as a deduction (with certain exceptions not applicable here) taxes paid or accrued within the taxable year; that on an accrual basis Kellerblock was entitled to deduct its liability for real and personal property taxes when all the events occurred which established the fact of the liability and the amount thereof could be determined with reasonable accuracy; that the event which established its liability for such taxes in the State of Washington was the existence of the property in that State on January 1 of the tax year; that on that date a reasonably accurate estimate of property taxes for the year could be made based on the previous year's experience; that there is no provision of the 1954 Code requiring proration of those taxes to the periods to which they apply; that section 164(d), requiring proration in the event that real property is sold during any real property tax year, is not applicable because Kellerblock did not sell the Grosvenor House Apartments in 1958; and that section 461(c), which permits the proration of real property taxes over a definite period of time to which such tax relates, at the election of the taxpayer, is not applicable because Kellerblock did not make such an election in its fiscal year

ending October 31, 1955, or, with the consent of the Secretary or his delegate, in any subsequent year.

The general rule is that taxes are accruable in the year in which all the events occur which fix the amount and the fact of the taxpayer's liability. *United States* v. *Anderson*, 269 U.S. 422, 441; *Dixie Pine Products Co.* v. *Commissioner*, 320 U.S. 516, 519. Property taxes generally accrue on a fixed date, and in the State of Washington that date is January 1. I.T. 3374, 1940-1 C.B. 34; G.C.M. 27440, 1952-2 C.B. 97. But even though liability for property taxes becomes fixed as of a specific date and notwithstanding that the 1939 Code and prior income tax laws contained no provision permitting the proration of such taxes over the period for which they were levied, where taxpayers on an accrual basis consistently followed the practice of allocating taxes on their books to monthly or other periods to which the taxes were applicable, it has been accepted by the courts for income tax purposes as sound accounting practice which clearly reflected their income. *Tennessee Life Insurance Co.* v. *Phinney*, 280 F. 2d 38 (C.A. 5), certiorari denied 364 U.S. 914; *Commisssioner* v. *Schock, Gusmer & Co.*, 137 F. 2d 750, 754 (C.A. 3); *Citizens Hotel Co.* v. *Commissioner*, 127 F. 2d 229, 230 (C.A. 5); *Whitney Manufacturing Co.*, 14 T.C. 1217, 1219.[1] Cf. *Atlantic Coast Line Railroad Co.*, 4 T.C. 140, acq. 1944 C.B. 2. And the soundness of this practice has been recognized under the 1954 Code. Rev. Rul. 57-539, 1957-2 C.B. 303, 304. In the *Tennessee Life Insurance Co.*, *Schock, Gusmer & Co.*, and *Citizens Hotel Co.* cases, in which each of the taxpayers followed the monthly accrual method and filed a return for a period of less than 12 months, deductions were allowed for the pro rata portion of the annual tax which accrued during the period for which the return was filed. In *Whitney Manufacturing Co.* it was held that an accrual-basis taxpayer, which filed returns for a fiscal year ending March 31 and accrued its property taxes on a month-by-month basis, was entitled to accrue and deduct nine-twelfths of the taxes levied for the calendar year ending within its fiscal year and three-twelfths of the taxes for the succeeding calendar year.[2] And in *Allen* v. *Atlanta Stove Works, Inc.*, 138 F. 2d 452 (C.A. 5),[3] where a taxpayer on an accrual

---

[1] In *United States* v. *Anderson*, 269 U.S. 422, 437-438, the Supreme Court quoted with approval that part of Treasury Decision 2433 which provided that it "will be permissible for corporations which accrue on their books monthly or at other stated periods amounts sufficient to meet fixed annual or other charges to deduct from gross income the amounts so accrued, provided such accruals approximate as nearly as possible the actual liabilities for which accruals are made * * *."

[2] The same conclusion was reached under similar facts in *Post Office Square Co.* v. *United States*, 191 F. Supp. 450 (D. Mass.).

[3] In this case the taxpayer in the year ending Mar. 31, 1935, and prior years had taken deductions for taxes as of the date of their actual payment in the latter part of the year preceding the return.

basis filed a return for the period April 1 to December 31, 1935, necessitated by a change, with the permission of the Commissioner, from a fiscal year to a calendar year basis, the court held that the net income for the short term was properly reflected by the apportionment to that term of nine-twelfths of the annual taxes. After indicating that in its opinion the taxes involved accrued after April 1, rather than in January, the court said (p. 453) :

> But we prefer to say that when by a shift from a fiscal year to a calendar year basis a short term return becomes necessary, the net income for that short term is not clearly or truly reflected, as is required by section 43, either by a deduction of all the annual taxes within the short term, or outside of it, but by a fair apportionment of this annual charge to the income producing period. Good accounting practice would so require. It is true that as between the state or city and the taxpayer the charge is not apportionable. The tax is payable in a lump sum for the support of government, and is not abated by the sale or destruction during the year of the property in respect of which he is taxed, and as between the taxing authority and the taxpayer it is not apportionable. But the United States is seeking, by the provisions of Section 43, to get a fair picture of the net income of its taxpayer for the period covered by the return. When the return covers a full year, no question of apportionment would ordinarily arise. When a short term return becomes necessary, as here, we think as a rule apportionment ought to be allowed. We adhere to our decision in the Citizens Hotel Company case.

In *Schock, Gusmer & Co.*, *supra*, the Commissioner urged, as the petitioner is urging in the instant proceeding, that a liability is accruable for income tax purposes as of the date when it becomes fixed, provided the amount is then ascertainable within reasonable limits, and that for income tax purposes State property taxes cannot be allocated over the year for which they were assessed, citing *Magruder* v. *Supplee*, 316 U.S. 394, as authority therefor. The Court of Appeals (137 F. 2d at 753) pointed out, however, that the Supreme Court in *Magruder* v. *Supplee* was not directly confronted with the question of the appropriate time for a taxpayer on the accrual basis to deduct State taxes assessed against him and we think correctly concluded that its decision did not constitute a reversal of prior decisions holding that State property taxes could be allocated by an accrual basis taxpayer over the year for which they were assessed. To the same effect see *Allen* v. *Atlanta Stove Works, Inc.*, *supra* at 452–453; *Post Office Square Co.* v. *United States*, 191 F. Supp. 450, 452–453.

Although the cited cases were decided under the 1939 Code and prior law, the principles enunciated therein with reference to the apportionment of taxes are equally applicable under the 1954 Code. Section 164 of the 1954 Code, like section 23(c) of the 1939 Code, provides that (with certain exceptions not material herein) there shall be allowed as a deduction taxes paid or accrued within the taxable

year.[4]   Section 446 of the 1954 Code, like section 41 of the 1939 Code, provides that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.   And the amount of any deduction allowed by the statute is required by section 461 of the 1954 Code to be taken in general for the taxable year which is proper under the method of accounting used in computing taxable income.

The parties have stipulated that throughout Kellerblock's period of operations it consistently followed the practice of accruing on its books each month one-twelfth of the estimated amount of taxes for the current year, based upon the previous year's experience, and for the last month of the year making balancing adjustments so as to reflect the correct total amount applicable for the year.[5]   It elected to continue this practice without objection by the Commissioner in its fiscal years ended October 31, 1955, 1956, and 1957, to which the 1954 Code applied.[6]

Had Kellerblock continued to follow its monthly accrual method during the period November 1, 1957, to January 31, 1958, it would have made monthly accruals on its books during that 3-month period

---

[4] In the *Tennessee Life Insurance Co.* case, 280 F. 2d at 41, the Court of Appeals said: "We think it clear that the terms 'pay or accrue' relate to the method of accounting used by a taxpayer.   In order for a cash basis taxpayer to be permitted to deduct taxes he must have actually paid them during the tax year.   In order for an accrual basis taxpayer to be permitted to deduct them, *he must, under the accrual system of accounting, accrue them on his books.* * * *"   (Italics supplied.)

[5] In this respect Kellerblock's method differed from that of the taxpayer in *Simon J. Murphy Co.* v. *Commissioner,* 231 F. 2d 639 (C.A. 6).   There, the taxpayer had consistently accrued its tax liabilities as of Jan. 1 of each year.   The court in the *Murphy* case held that the taxpayer was entitled to deduct the entire amount of real estate taxes for the year 1950 in its return for the period Jan. 1 to Jan. 11, 1950, even though they were paid after its dissolution by a corporation which had purchased its stock, reversing this Court's decision in 22 T.C. 1341 which allowed a deduction of ¹¹⁄₃₆₅ of the year's taxes.   In the *Tennessee Life Insurance Co.* case, the Court of Appeals (280 F. 2d at 41) refused to follow the Court of Appeals decision in the *Murphy* case.   The Supreme Court denied certiorari in the *Tennessee Life Insurance Co.* case.   364 U.S. 914.   The Commissioner adheres to the decision in the latter case and does not follow the decision in the *Murphy* case.   Rev. Rul. 62–45, 1962–1 C.B. 27.

Petitioner argues on brief that Kellerblock did not in fact follow a practice of monthly proration of property taxes but that it "followed a consistent practice of deducting in each income tax return only those taxes which accrued on January 1 of each year."   The facts in this case were fully stipulated and no such fact appears in the stipulation of facts.   The burden of proof was upon the petitioner and we cannot accept as fact such an assertion by petitioner which rests upon inferences to be drawn from materials in the stipulation that are at best inconclusive.

[6] Sec. 461(c)(1) of the 1954 Code provides that if taxable income is computed under an accrual method of accounting, then, at the election of the taxpayer, any real property tax which is related to a definite period of time shall be accrued ratably over that period, and sec. 461(c)(3)(A) provides that a taxpayer may, *without the consent of the Secretary or his delegate, make an election for his first taxable year which begins after Dec. 31, 1953, and ends after Aug. 16, 1954,* in which the taxpayer incurs real property taxes.   The filing of the first such return under the 1954 Code continuing the prior practice of accruing property taxes ratably may well constitute the making of such election ; and, in any event, the petitioner, who has the burden of proof, has not shown that such election was not in **fact made.**

in respect of its property taxes,[7] and it would have had a closing entry on its books for the 3-month period based upon such accruals which would have been deductible on its return. Instead, it claimed in its return for that period a deduction of $60,774 which represented its liability for property taxes for the entire year 1958. This was inconsistent with the monthly accrual method it had followed in prior years. Having established that method, it had to adhere thereto in the absence of permission by the Commissioner to effect a change. Under the 1954 Code such permission is required not only in connection with the change in the overall method of accounting but also in the accounting treatment of any item. *Dorr-Oliver, Inc.*, 40 T.C. 50; Income Tax Regs., sec. 1.446–1(a). And this rule was applied in *Broida, Stone & Thomas, Inc.* v. *United States*, 204 F. Supp. 841, 843 (D. W. Va.), affirmed per curiam 309 F. 2d 486 (C.A. 4), so as to require a taxpayer to adhere to its practice of accruing taxes monthly. To permit the taxpayer herein to offset property taxes for the entire year 1958 against its income for a 3-month period would plainly result in a distortion of its taxable income for that period. An allocation of 3 months' taxes to that period was proper in order to clearly reflect Kellerblock's income.

The Commissioner has suggested on brief that the amount of deduction allowed in the deficiency notice (three-twelfths of $60,774) was too much in the circumstances of this case. However, he does not press the point, and it is not properly in issue. We hold merely that the taxpayer was required to accrue its property taxes monthly in accordance with its uniform practice, and since the deduction allowed by the Commissioner is not less than the amount properly allowable his determination in this connection must be sustained.

*Decision will be entered under Rule 50.*

---

[7] In *Citizens Hotel Co.* v. *Commissioner*, 127 F. 2d 229, 230, the Court of Appeals made the following comments concerning substantially the same method used by the taxpayer in that case:

"As is fully explained in United States v. Anderson, 269 U.S. 422, * * * the accrual basis for income tax returns was introduced to facilitate a true reflection of business incomes according to sound accounting principles; and the taxpayer's bookkeeping, if in accordance with such principles and truly reflecting net income, is allowed to be used as a basis of returns. * * * The taxpayer's books are kept on a general accrual basis, and this annual tax charge is distributed by months over the year. The amount of it has to be estimated until the tax is determined, and an adjustment is made thereafter. This is conceded to be good accounting practice, and we think it clearly reflects the true income for a period less than a year."